IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

PHILIP P FREDERIC                                                                                    PETITIONER
*ADC #167147*

V.                              CASE NO. 4:20-cv-00842-KGB-JTK

DEXTER PAYNE
*Director, ADC*                                                                                      RESPONDENT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any

documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

I. **Introduction**

Before the Court is Philip Frederic's Petition for Writ of Habeas Corpus. *Doc.* 2.[1] Frederic is an inmate in the Arkansas Division of Correction ("ADC"). Following a trial on May 17, 2017, a jury found Frederic guilty of conspiracy to commit rape and sentenced him to the maximum sentence of 30 years' imprisonment for the offense. *See Doc.* 9–7 at 49-54. Frederic appealed his conviction, arguing the State's evidence was insufficient to support his conviction. *Frederic v. State*, 2018 Ark. App. 449, 560 S.W.3d 494 (*Frederic I*). The Arkansas Court of Appeals affirmed. *Id.* at 8, 560 S.W.3d at 499.

Frederic filed a Rule 37 petition, which was denied by the circuit court on July 18, 2019. *See Doc.* 9–7 at 294-95, 313. He appealed, and on February 19, 2020, the Arkansas Court of Appeals affirmed. *Frederic v. State*, 2020 Ark. App. 129, at 7 (*Frederic II*). On July 16, 2020, Frederic timely filed this habeas petition. *Doc.* 2. For the reasons stated below, the Court recommends that Frederic's petition be dismissed with prejudice.

---

[1] The italicized "*Doc.*" refers to the docket number entry in the Court's electronic filing system for this case. The Court will cite to the docket number entries rather than the title of each filing.

## II. Background

### a. Underlying State Case

Faulkner County Sheriff's Investigator Chad Meli ("Officer Meli") testified that on February 14, 2016, he used an undercover account on the online messaging service, Kik, to answer an advertisement on Craigslist. *Frederic I* at 1, 560 S.W.3d at 495-96. The advertisement, titled "Seeking dads and daughters," read:

> Seeking to talk with a dad who has a daughter interested in mature gentlemen. We could begin by sharing our interests and getting to know a little about each other and your daughter and what her interests are . . . in men. Nothing too taboo to share, no judgements[sic], you can kik me at cfcardinal. I'm a father with a daughter also…

*Id.* at 1-2, 560 S.W.3d at 496. Officer Meli's profile was that of a 42-year-old father named "T.J.," who had a 13-year old daughter named "Kaci." *Id.* at 2, 560 S.W.3d at 496. The username "cfcardinal," Frederic later told the jury, was his Kik username. *Doc.* 9–12 at 375.

The Court of Appeals provided the following (considerably sanitized) overview of the sexually explicit communications between Frederic and "T.J.":

> Frederic responded to "T.J." by asking if "Kaci" was sexy and by saying that he (Frederic) had a "hot" fifteen-year-old daughter whom he used to "f* *k." Frederic sent a picture of himself and several pictures of a young girl (who was later identified as Frederic's fifteen-year-old daughter) to "T.J." Then "T.J." sent pictures of "Kaci" (an adult female) to Frederic. "T.J." told Frederic that "Kaci" played with[2] him because he bought her "s* *t." The conversation between Frederic and "T.J." continued and contained sexually graphic language, including Frederic's repeating multiple times that he would like to "f* *k" "T.J.'s" "sweet little thirteen-year-old" daughter. "T.J." said that he was willing to make "Kaci" available for Frederic's sexual gratification. Frederic asked, "What would I have to buy her?"

*Frederic I* at 2, 560 S.W.3d at 496 (footnote in original as n.2).

The Court of Appeals continued, describing Frederic's agreement to travel to Mayflower

---

[2] Officer Meli testified that in this context, playing with someone is synonymous with having sexual contact with someone.

3

bearing gifts for Kaci, his ensuing arrest, and the resulting criminal charges:

> The next day, Frederic and "T.J." chatted again, and during this conversation, Frederic made arrangements to meet "T.J." and "Kaci" around 4:30 p.m. at an Exxon station in Mayflower, Arkansas. Frederic gave "T.J." his phone number, said his name was "Phil" and that he drove a dark blue Chevrolet Ventura van. Frederic again asked "T.J." what he should buy "Kaci." "T.J." responded that she liked Michelob Ultra beer and glitter nail polish. "T.J." also said that pink and purple were "Kaci's" favorite colors.
>
> Upon meeting Officer Meli at the Exxon station as planned, Frederic was arrested. In his van, officers found twelve Michelob Ultra beers, pink and purple glitter nail polish, and a hunting knife.[3] Officer Meli testified that Frederic was arrested and charged with conspiracy to commit rape based on Officer Meli's online conversations with Frederic, along with the facts that Frederic showed up at the planned meeting location and brought with him the beer and nail polish.

*Id*. at 2-3, 560 S.W.3d at 496 (footnote in original as n.3).

> The Court of Appeals then described Frederic's testimony in his own defense:
>
> He admitted that he was familiar with the Craigslist ad to which "T.J." had responded; that he had seen it; that the address on the ad was his; and that he had posted a similar ad on Craigslist on February 9, 2016, after chatting with someone else online named "Texas Stepdad"; but he denied posting the advertisement. He also admitted that he (1) engaged in the sexually explicit conversations with "T.J."; (2) sent pictures of himself and his daughter to "T.J."; (3) arranged a meeting with "T.J." and "Kaci," who he thought was thirteen years old; (4) showed up at the meeting location as planned; and (5) brought the gifts for "Kaci" that "T.J." had suggested. Frederic testified that he did all these things for research. He described in great length his academic interest in human sexuality and that he wanted to learn whether he could develop an online-research technique in this area. He stated that his plan was to introduce himself online as a member of whatever demographic he was studying—homosexual, pedophile, transgender, transsexual—and immerse himself into the dialogue of that demographic so that he could have "an honest conversation" about people's different sexual choices. He said that he had no intention of meeting with any of the people he conversed with and had not met with any of them until he arranged the meeting with "T.J." and "Kaci." He testified that his true intent in meeting with "T.J." was to have a conversation, get a pizza, and drink some beers. Nevertheless, during his testimony, Frederic conceded the wrongfulness of his conduct, stating, "It was an active indiscretion" and "I should not have been in that conversation."

*Id*. at 3-4, 560 S.W.3d at 496-97.

---

[3] Officer Meli testified that he did not believe the knife was related to Frederic's meeting with "T.J." and "Kaci."

In rebuttal, Officer Meli described his post-arrest interview with Frederic, which was played for the jury. *Doc.* 9–12 at 406-35. In that interview, as Frederic acknowledged on cross-examination, he never told Officer Meli that his correspondence and meeting with the fictional "T.J." were part of an ongoing personal research project into human sexuality. *See id*. Frederic also admitted to Officer Meli that he placed the Craigslist advertisements that led Officer Meli to initiate contact with him. *Id*. at 409-10.

### b. Direct Appeal

On appeal, Frederic challenged the sufficiency of the State's evidence. The Arkansas Court of Appeals held that substantial evidence supported Frederic's conviction "because there was evidence that Frederic made a plan with 'T.J.' to rape 'Kaci,' and Frederic took overt steps in furtherance of the plan." *Frederic I* at 6, 560 S.W.3d at 498. The court thus affirmed his conviction. *Id*. at 8, 560 S.W.3d at 499.

### c. Rule 37 Petition

On October 31, 2018, Frederic filed a Rule 37 petition in the court that sentenced him. *See Doc.* 9–7 at 144-54. In his petition, Frederic raised multiple grounds for relief, including claims of ineffective assistance of counsel. He argued that his counsel failed to present exculpatory evidence that would have demonstrated that: (1) a third party placed the Craigslist advertisements that put Frederic in touch with "T.J."; and (2) Frederic was merely engaged in scientific research and thus lacked the requisite intent to commit the crime of conspiracy. *Id*. at 147-52.

The circuit court held an evidentiary hearing on Frederic's petition. *Id*. at 350-76. At the hearing, Frederic's attorney explained that he had presented the trial defense Frederic had suggested, *i.e.*, that Frederic's intent was only to engage in conversation with people with various sexual proclivities for the purpose of academic research. *See id*. at 356-63. He testified that it was

trial strategy to not attack Frederic's posting of the ads because "the language of the ads was critical in establishing his intent only to talk at that point." *Id*. at 362. Frederic's attorney testified that, in his judgment, arguing that a third party had posted the ads as a "set up" to frame Frederic would directly contradict his defense that the ads were posted in the pursuit of research. *Doc*. 9–7 at 358-59. The circuit court ultimately denied relief. *Id*. at 293-95.

### d. State Postconviction Appeal

Frederic appealed the circuit court's denial of his Rule 37 petition, pressing the same ineffective-assistance arguments he made before the trial court. The Arkansas Court of Appeals affirmed, finding that Frederic had failed to demonstrate that his counsel's performance was deficient or had caused him prejudice. *See Frederic II*.

### e. This Habeas Petition

On July 16, 2020, Frederic timely filed the present habeas petition. *Doc*. 2. In it, Frederic raises the following four enumerated grounds for relief: 1) he is "factually innocent and actually innocent"; 2) the evidence was insufficient to support his conviction; 3) he was denied his constitutional right to substantive due process; and 4) he was deprived of his civil rights pursuant to 42 U.S.C. § 1985. *See id*. at 26-43.

Although Frederic's first ground for relief is styled as an "actual innocence" claim, his argument is substantively—like his second claim—a challenge to the sufficiency of the State's evidence. Frederic's third and fourth claims stem from allegations of ineffective assistance of counsel and mirror the claims he pursued in state court.

## III. Discussion

### a. Applicable Law

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides that federal courts

cannot grant habeas relief for any claim "adjudicated on the merits in State court proceedings" unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). As to the first section, the Eighth Circuit has explained,

> A decision is "contrary to" clearly established federal law if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that of the Supreme Court]." A decision is "an unreasonable application of" clearly established federal law if [it] is clearly erroneous, that is, if no "'fairminded jurists could disagree' on the correctness of the state court's decision."

*Armstrong v. Hobbs*, 698 F.3d 1063, 1066 (8th Cir. 2012).

"Satisfying either prong under 28 U.S.C. § 2254(d)(1) is meant to be difficult, because AEDPA 'reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems.'" *Smith v. Titus*, 958 F.3d 687, 691 (8th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Relief is only available where a state court's ruling on a federal claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. (quoting *Harrington*, 562 U.S. at 103).

With respect to § 2245(d)(2), "an unreasonable determination of the facts in light of the evidence presented in state court proceedings occurs only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *White v. Dingle*, 757 F.3d 750, 755-56 (8th Cir. 2014) (cleaned up). The petitioner "must also demonstrate that the state court's determination of facts was unreasonable." *Id*. at 756 (cleaned up).

7

### b. Sufficiency of the Evidence

The Court assesses Frederic's first two claims as challenging the sufficiency of the evidence supporting his conviction. The clearly established federal law applicable to sufficiency claims is *Jackson v. Virginia*, 443 U.S. 307 (1979). *See, e.g.*, *Stephen v. Smith*, 963 F.3d 795, 799 (8th Cir. 2020). Under *Jackson*, a petitioner's conviction will be upheld unless "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. The Court must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. at 319.

The Court of Appeals explained that "the crime of conspiracy is complete on the agreement to violate the law as implemented by one or more overt acts, however innocent such act standing alone may be," and that "conspiracy may be proved by circumstances and the inferences to be drawn from the course of conduct of the alleged conspirators." *Frederic I* at 5-6, 560 S.W.3d at 498. The court recounted evidence the State presented at trial, including text exchanges between Frederic and "T.J." in which Frederic: (1) expressed his desire to rape "T.J.'s" thirteen-year-old daughter "Kaci"; (2) agreed with "T.J." on a plan to commit that crime; and (3) performed multiple "overt acts" in pursuance of that plan, including traveling to Mayflower, showing up at the meeting place at the appointed time in the vehicle he said he would be driving, and having two gifts in his vehicle that "T.J." had told him "Kaci" would like and would encourage her to "play." *Id*. at 6, 560 S.W.3d at 498.

After considering the totality of the State's evidence, the court found that sufficient evidence supported Frederic's conviction. *Frederic I* at 8, 560 S.W.3d at 499. "[T]he only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare

rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).

The Arkansas Court of Appeals' decision was not contrary to, or an unreasonable application of federal law; or an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). This Court has no trouble concluding that a rational juror could convict Frederic of conspiracy to commit rape based on the evidence the State presented at trial. *See* Ark. Code Ann. §§ 5-3-401 (conspiracy), 5-14-103(a)(3)(A) (rape). The graphic text messages Frederic sent to "T.J." strongly support the jury's conclusion that Frederic had the intent to engage in sexual activity with a thirteen-year-old girl and agreed upon a plan with "T.J." for Frederic to commit that criminal offense. A rational juror could find that any (or all) of the following acts constituted an overt act in pursuance of the agreement: that Frederic traveled to Mayflower; that Frederic showed up at the meeting place at the appointed time in the vehicle he said he would be driving; and that Frederic had two gifts in his vehicle that "T.J" said "Kaci" would like and would encourage her to play."

The state court's findings and conclusions are firmly grounded in the record. The jurors were entitled to draw their own inferences about Frederic's intent based on his course of conduct, and a rational trier of fact could easily find the essential elements of the crime of conspiracy were met beyond a reasonable doubt. Relief on this claim should therefore be denied.

Although the Court construes Frederic's first claim as a challenge to the sufficiency of the State's evidence, to the extent Frederic does present an actual innocence argument, he has failed to demonstrate he is entitled to relief. In some cases, when a habeas petition would otherwise be procedurally defaulted, a court may still consider the petition if the petitioner can demonstrate proof of actual innocence, supported by new and reliable evidence which shows "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *See*

*Schlup v. Delo*, 513 U.S. 298, 327 (1995). But the Supreme Court has not yet determined "whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). It has established, however, that if such a claim were recognized, the threshold would be "extraordinarily high"—higher, even, than the standard required for otherwise procedurally-defaulted claims. *Dansby v. Hobbs*, 766 F.3d 809, 816 (8th Cir. 2014) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)).

Frederic has not proffered any new evidence to support his claim of actual innocence. His petition, accordingly, falls far short of the extraordinarily high standard that would be required to satisfy a hypothetical freestanding actual innocence claim. The claim should be denied.

   c. **Ineffective Assistance of Counsel**

The clearly established federal law applicable to ineffective assistance claims is *Strickland v. Washington*, which held that a petitioner claiming ineffective assistance of counsel must show: "(1) that his lawyer's representation fell below an objective standard of reasonableness; and (2) that the lawyer's deficient performance prejudiced the defendant." *Abernathy v. Hobbs*, 748 F.3d 813, 816 (8th Cir. 2014) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). To make the requisite showing of prejudice, a defendant must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The combination of AEDPA and *Strickland* establishes a "doubly deferential" standard of review for petitions alleging ineffective assistance of counsel. *See Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citation omitted). On review, the Court applies a strong presumption that counsel's conduct fell within the "wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689).

Applying the two-pronged *Strickland* standard, the state court found that Frederic had failed to demonstrate that his counsel's performance was deficient or that his counsel's performance prejudiced him. *See Frederic II* at 5-6. The court dismissed Frederic's ineffective assistance of counsel claims as meritless and affirmed the circuit court's denial of his Rule 37 petition. *Id*. at 5, 7.

In the instant petition, Frederic challenges his counsel's performance on the same grounds that he urged before the state court. First, Frederic argues that his attorney should have pressed a "stolen identity" theory at trial to corroborate Frederic's testimony that a third party posted the Craigslist advertisements putting him in contact with Officer Meli. Second, he claims his attorney should have introduced evidence of his previous sexually explicit Craigslist activity to corroborate his testimony that his intent in meeting "T.J." was only to engage in self-directed research on human sexuality.

### 1. Evidence That a Third Party Posted the Advertisements

The Arkansas Court of Appeals rejected Frederic's argument that his counsel should have urged that it was a third party, not Frederic, who posted the advertisements Officer Meli responded to on Craigslist. *Frederic II* at 5. In doing so, the court cited testimony from Frederic's Rule 37 hearing, wherein his attorney explained his opinion that "disputing whether Frederic had posted the Craigslist advertisement through which he and the undercover officer made contact would have been counter to his 'innocent intent' defense." *Id*. at 3. The court also noted his counsel's reasoning that "trying to argue that Frederic had been 'set up' and had not posted the advertisement would have been undercut by Frederic's own statement to Officer Meli, in which Frederic admitted posting the advertisement." *Id*.

The court concluded that Frederic's counsel's trial decisions were "well reasoned

considering Frederic's chosen defense that his behavior had been motivated by a desire to do research on human sexuality," and thus his counsel's performance was not deficient under the first prong of *Strickland*. *Id*. at 6. The court further held that Frederic's admission to Officer Meli that he had placed the ad prevented him from being able to demonstrate prejudice arising from his counsel's failure to refute that fact. *Id*.

The Arkansas Court of Appeals' decision was not contrary to, or an unreasonable application of federal law; or an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). Frederic's trial counsel was not required to present inconsistent defense theories to the jury, and his decision not to pursue the "identity theft" theory beyond Frederic's own testimony was reasonable in light of other substantial evidence in the trial record, including: (1) Frederic's admission to Officer Meli that he had placed the advertisement leading to their initial contact (*Doc.* 9–12 at 406-10); (2) Frederic's admission at trial that he was familiar with the advertisement and that the Kik address on the ad was his (*id*. at 350, 375-76); and (3) Frederic's admission at trial to having a text conversation with "Texas Stepdad" on February 9, 2016, the transcript of which revealed that Frederic was seeking to have sex with underage girls, that Frederic questioned "Texas Stepdad" about how to find these girls, that "Texas Stepdad" recommended that Frederic post an ad on Craigslist, and that Frederic told "Texas Stepdad" he had posted the ad (*Id*. at 381-87). The state court reasonably concluded that Frederic failed to show his counsel's performance was anything less than reasonable under the circumstances. *See Middleton v. Roper*, 455 F.3d 838, 848-49 (8th Cir. 2006) ("We give great deference to counsel's informed strategic decisions, noting we must resist the temptation to second-guess a lawyer's trial strategy.") (internal quotation omitted).

The Court of Appeals also reasonably applied the second prong of *Strickland*. In light of

12

the substantial evidence in the record suggesting that Frederic did indeed post the advertisement (including his own admission to law enforcement), Frederic failed to demonstrate a reasonable probability that his trial result would have been different had his counsel pursued the "identity theft" theory.[4] Under § 2254(d) review, this claim should be denied.

### 2. Evidence of Previous Craigslist Activity

Frederic's second claim of ineffective assistance fares no better than the first. As he did in state court, Frederic argues that his attorney "concealed" evidence of his Craigslist account activity that would have convinced the jury that his sexually explicit communications comprised "fictional narratives" which Frederic engaged in for the sake of his self-directed scientific research.

The Court of Appeals found that this ineffective-assistance argument was substantively the same as his first, namely that his counsel should have introduced more evidence at trial regarding his prior Craigslist activity. *Frederic II* at 6. Frederic did not provide any evidence to support his conclusory allegations of concealment, nor did he question his counsel about them at the Rule 37 hearing. *Id*; *Doc.* 2–7 at 363-67.

The court's decision was not contrary to, or an unreasonable application of federal law; or an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). Even assuming *arguendo* that Frederic could establish his counsel's performance was deficient, he has failed to demonstrate a reasonable probability of a different outcome at trial absent the alleged error. *See Ramirez v. U.S.*, 751 F.3d 604, 607 (8th Cir. 2014) (unnecessary to evaluate effectiveness of counsel if Court determines no prejudice resulted from counsel's alleged deficiencies).

It is unrealistic to believe that the jury would have decided Frederic's case differently if

---

[4] It is worth noting here—as the state court explained on direct appeal—that even if Frederic was not responsible for posting the ad, substantial evidence nevertheless supports his conviction. *See Frederic I*, at 7, 560 S.W.3d 494, 498.

13

only his counsel would have introduced evidence regarding his sexually explicit Craigslist history from 2014. The evidence against Frederic was substantial. At trial, Frederic admitted to having a conversation with "Texas Stepdad" on February 9, 2016 about how to solicit offers for "underage girls." *Doc.* 2–12 at 385. During that conversation, "Texas Stepdad" advised Frederic to post an ad on Craigslist, and Frederic wrote "Done. We'll see what happens." *Id*. The Craigslist ad that Officer Meli responded to, which contained Frederic's Kik address, was posted on the same day. *Id*. at 386. Frederic also admitted to having an extremely graphic conversation with Officer Meli, who was posing as "T.J.," wherein Frederic expressed a desire to have sex with "T.J.'s" thirteen-year-old daughter and made plans with "T.J." to meet. *Id*. at 379. He showed up at a predetermined place and time with gifts that "T.J." said his daughter would like, in a vehicle he had told "T.J." he would be driving. *Id*. at 287-88. Upon arrest, he told Officer Meli that he had placed the Craigslist ads, but his story at trial was that although he had drafted similar ads on Craigslist, he had never published them to the website, so a third party must have posted them. *Doc.* 2–12 at 350, 379, 409. And, during their interview, Frederic did not tell Officer Meli that he was conducting research. *Id*. at 380.

The Court agrees with the state court's reasonable conclusion that Frederic's allegations failed to demonstrate *Strickland* prejudice. Pursuant to § 2254(d) review, this claim should be denied.

IV. **Certificate of Appealability**

Under Rule 11 of the Rules Governing § 2254 Cases, the Court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. The question is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve

encouragement to proceed further." *Frederic-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Petitioner has not made a substantial showing of a denial of a constitutional right, so no certificate should issue.

V.   **Conclusion**

    IT IS THEREFORE RECOMMENDED that:

1. Frederic's § 2254 habeas petition, *Doc. 2*, be DISMISSED WITH PREJUDICE and his pending Renewal of Motion for Summary Judgment as a Matter of Law, *Doc. 31*, be DENIED as moot.

2. A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

    ORDERED this 12th day of April, 2022.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE